United States District Court
District of Connecticut
FILED AT BRIDGEPORT

March 11, 2024

By *Djess Jacques*
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE INTERIOR CHEEKS OF THE MOUTH OF MORRIS CARTER WITH TWO BUCCAL SWABS | Case No.  3:24-mj-00207-SDV<br><br>Date: March 11, 2024 |

## MASTER AFFIDAVIT FOR DNA WARRANT

I, Calvin DeVries, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I am a Special Agent with the Federal Bureau of Investigation (hereinafter the "FBI") and have been since June 2021. I am currently assigned to the New Haven Field Office of the FBI, and, in particular to, the Bridgeport Safe Streets Task Force ("Task Force"), which is comprised of personnel from the FBI, Bridgeport Police Department, Norwalk Police Department, Connecticut State Police, and the Trumbull Police Department. The nature of the investigations the Task Force conducts includes investigations into firearms offenses, narcotics offenses, racketeering crimes, and violent crimes.

2.    I am a graduate of the FBI Training Academy in Quantico, Virginia where I received training in diverse criminal matters, interviewing, interrogation, evidence collection, intelligence analysis, and legal matters, among other topics. Prior to joining the FBI, I was employed as a law enforcement officer with the United States Secret Service Uniformed Division from 2018-2021. During my employment with the United States Secret Service, I held the position title of Police Officer. Throughout my employment with the United States Secret Service, I conducted and assisted with investigations into traffic stops, driving offenses, assaults, thefts, and property crimes, among other topics.

3. During my time as an FBI special agent, I have participated in multiple criminal investigations, including investigations into suspected homicides, armed robberies, narcotics trafficking, firearms trafficking, violent criminal activity, racketeering, and money laundering. My participation in these investigations has included assisting in the controlled purchase of narcotics utilizing confidential sources, participating in the execution of search and arrest warrants, conducting electronic and physical surveillance, analyzing records related to narcotics trafficking, and reviewing and analyzing cellular records and cell site information. I have assisted in investigations into organized criminal enterprises, including violent street gangs and large-scale narcotics trafficking organizations.

4. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I have personally participated in the investigation concerning violations of the federal laws listed herein.

5. I have participated in this investigation and, as a result of my participation and information received from other law enforcement officers, including agents of the FBI, officers and detectives of the Bureau of Alcohol, Tobacco and Firearms ("ATF"), Officers and Detectives from Wethersfield Police Department ("WPD"), and Officers and Detectives from the Hartford Police Department ("HPD") (collectively referred to as "law enforcement"). I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit. The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2) information provided to me by law enforcement; and (3) my experience and

training. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all my knowledge about this matter.

6.  I submit this affidavit in support of a search and seizure warrant authorizing the retrieval of DNA from **MORRIS CARTER (DOB known to me of xx/xx/1988)** (hereinafter referred to as CARTER). I am currently investigating CARTER for Unlawful Possession of a Firearm by a Felon in violation of Title 18, United States Code, Section 922(g)(1) and 924(a)(8) and Unlawful Possession of a Firearm with an Obliterated Serial Number in violation of Title 18, United States Code, Section 922(k) and 924(a)(1)(B) (hereinafter referred to as "Target Offenses"). CARTER has been charged by federal indictment with the Target Offenses. *See* 23CR74(KAD).

7.  CARTER has been detained since his federal arrest on May 4, 223 for the Target Offenses.

8.  This affidavit does not set forth all the facts and evidence that are relevant to seek a search warrant for CARTER's DNA. Rather, this affidavit is intended to show merely that there is sufficient probable cause for the requested DNA warrant. There is probable cause to believe that the buccal swab DNA samples will constitute evidence of CARTER's commission of the Target Offenses.

## JURISDICTION

9.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

10. **I submit this affidavit in support of a search and seizure warrant authorizing the retrieval of DNA from MORRIS CARTER.**

## PROBABLE CAUSE FOR DNA WARRANT

11. On February 19, 2023, at approximately 3:50 AM, Officer Jaysen Nunez of HPD was dispatched to 675 Wethersfield Avenue, Hartford, Connecticut, which is a Sunoco Gas Station, for the report of two black males fighting inside the store. The complainant, who was the clerk of the Sunoco gas station, advised of two males fighting outside of the store and one of the males pointed a firearm at the other male who was bleeding from his face. After the fight, one of the males entered a black Toyota Camry, bearing Connecticut License Plate "AT07658", hereinafter referred to as "AT07658", and the car left the scene heading west bound on Brown Street towards Franklin Avenue.

12. HPD Officers Karina Rivera and Barrett Brandon located the vehicle with plate AT07658 traveling north bound on Franklin Avenue. The two Officers attempted to conduct a vehicle stop by activating their cruisers lights and sirens, but the operator of the AT07658 license plate vehicle conducted a U-turn, disregarding the lights and sirens, and proceeded to drive at a high rate of speed southbound on Franklin Avenue. Officer Nunez, who was traveling northbound on Franklin Avenue, turned around and activated his lights and sirens in an attempt to conduct a motor vehicle stop. Due to the operator of the vehicle with license plate AT07658 refusing to stop the vehicle, HPD called off the vehicle pursuit. HPD dispatch advised WPD of the direction of travel of the black Toyota Camry so they could be aware of the incident.

13. At approximately 3:58 AM on February 19, 2023, WPD Officer Tanner Givens received information from Hartford Police Department about a "Be-On-The-Lookout" (BOLO) for a black Toyota Camry bearing Connecticut Registration AT07658. Officer Givens was able to

locate the vehicle near the D'Esopo's funeral home in Wethersfield, and after confirming the correct registration on the vehicle, he conducted a felony motor vehicle stop. The operator of the vehicle complied with the motor vehicle stop in the area of Nott Street and Tanglewood Road in Wethersfield.

14. The operator was identified as MORRIS CARTER, date of birth known to me of xx/xx/1988. CARTER complied with all verbal commands given to him by Officers and was detained without incident. Officer Givens witnessed a female passenger inside AT07658, later identified as Nicole Holcomb, date of birth xx/xx/1988, hereinafter referred to as Holcomb. Holcomb complied with all commands during the motor vehicle stop, and she was also detained without incident.

15. HPD Officer Nunez returned to 675 Wethersfield Avenue, the Sunoco gas station, after disengaging in the pursuit of the black Toyota Camry. Officer Nunez spoke with the victim, identified as Sean King, date of birth known to me of xx/xx/1966. King reported getting into a verbal altercation with another male (later identified as CARTER), in the Sunoco gas station. King further reported to Officer Nunez that the other male mentioned having a firearm on his person before the altercation occurred. King witnessed CARTER reach into his waistband area where he observed a magazine from a firearm sticking out. King in fear for his life, engaged by grabbing CARTER's arm and preventing him from brandishing the firearm. This action resulted in a physical altercation between the two which culminated with CARTER pistol whipping King in the head, causing lacerations to form. Officer Nunez, while interviewing King, witnessed multiple live firearm rounds lying on the ground in front of the front entrance to the Sunoco gas station. King reported these rounds came from the firearm struck across his head during the altercation, which he described as a black Tec-9 firearm with an extended magazine attached to it.

16. King verbally agreed to complete a "Show-up" and signed a Witness Identification Form. King positively identified CARTER, via the "Show-up", as the individual who assaulted him with the firearm. King stated to HPD Officer Nunez "I am confident that it's him".

17. Officer Nunez spoke with Holcomb, who was the front passenger. Holcomb said she never entered the Sunoco gas station with CARTER, but she did witness CARTER and another individual (King), having a physical altercation outside the gas station. Holcomb further reported CARTER then entered the vehicle and began traveling west on Brown Street. Holcomb reported that she observed police lights and sirens behind her as they were traveling north on Franklin Avenue and said she was in fear for her life due to CARTER driving at a high rate of speed and not pulling over. Holcomb reported that CARTER did roll down his window at some point, but she did not observe if CARTER threw anything out of it. Holcomb consented to a search of the car. HPD Officers Barrett and Nunez conducted the search and located a black magazine containing live rounds underneath the passenger seat. Holcomb said that she was unaware of the magazine being inside of her vehicle and reported it did not belong to her. At this time, HPD Officers did not locate a firearm inside of the car. The following items were seized from the scene at the Sunoco gas station and the traffic stop:

   a) (19) Nineteen live 9mm bullets.

   b) (1) One black magazine containing live bullets.

18. The next day, on February 19, 2023, around 8:55 AM, WPD Officer Nuno Martins was dispatched to 36 Reed Drive, Wethersfield, Connecticut, on the report of a found firearm in the driveway of a residence. As Officer Martins exited his patrol car, he saw a loaded high-capacity magazine in the roadway, a few yards south of the driveway belonging to 32 Reed Drive. A witness advised that shortly before the police were called, his wife arrived at 36 Reed Drive to

pick up their laundry. Upon arrival to the house, she witnessed the firearm when she exited her vehicle. They did not touch the firearm and stayed with it until police arrived to secure the scene. Officer Martins identified the firearm as a black Intratec 9mm TEC-CD9 pistol. The rear of the pistol had a shoelace which was looped through a ring mounted on the frame. WPD Officer Barry Veilleux and Officer Martins proceeded to search the area to locate any additional items associated with the firearm. Officer Veilleux located a second pistol in front of 24 Reed Drive. This firearm was identified as a black Hi-Point Firearm Model JCP 40 S&W, and the firearm did not contain a magazine in it. Reed Drive was secured by WPD Officers to preserve the scene, and WPD Detective Malinowski was requested to respond.

19. WPD Detective Malinowski reported the following evidence items were found near 36 Reed Drive:

  a) Hi-Point Firearm .40 cal, serial # X7294290. A COLLECT/NCIC search showed the firearm had been reported stolen in 2016.

  b) Intratec 9mm Luger Tec-DC9, serial number was obliterated.

  c) Extended magazine, unknown make/model.

  d) Bullet from extended magazine.

  e) Bullet from chamber of Intratec 9mm Luger Tec-DC9.

  f) Bullet underneath CT 705WNJ, in driveway of 32 Reed Drive.

  g) Bullet located in road near 32 Reed Drive.

20. Detective Malinowski took a Cap-Shure DNA swab of the gun grip of the Hi-Point Firearm .40 cal, hereinafter referred to as Item 1, and a Cap-Shure DNA swab of the gun grip of the Intratec 9mm Luger Tec-DC9, hereinafter referred to as Item 2. On March 3, 2023, Detective

Malinowski submitted Item 1 and Item 2 to the State of Connecticut Department of Emergency Services and Public Protection for DNA testing.

21. On February 23, 2024, the State of Connecticut Department of Emergency Services and Public Protection provided a DNA report for Item 1 and Item 2. They advised that Item 1 returned with a mixture of a profile found and Item 2 returned with a male profile found. The profiles are suitable for comparison. A screening presence for blood was performed on Item 2, and blood was indicated with the test.

22. The affiant did a google maps query of the distance between the D'Esopo Funeral Home, located at 277 Folly Brook Boulevard, Wethersfield, Connecticut and 36 Reed Drive, Wethersfield, Connecticut. The distance is approximately .9 miles between the two. The distance between 675 Wethersfield Avenue, Hartford, Connecticut, and 36 Reed Drive is 1.1 miles with 36 Reed Drive being directly south of 675 Wethersfield Avenue. Franklin Avenue, the road in which the vehicle with license plate AT07658 traveled south on, turns into Wollcott Hill Road. A side street of Wollcott Hill Road is Reed Drive, where the firearms were recovered.

## DNA EVIDENCE

23. I have probable cause to believe and do believe that the DNA evidence collected from CARTER will likely match DNA evidence found on either the Hi-Point Firearm .40 cal and/or the Tec-DC9 Firearm. Once a DNA profile is obtained through buccal swab from CARTER, the profile can be compared against the DNA profile found on both the firearms.

## METHOD

24. The DNA sample of CARTER sought herein will be collected by buccal swabbing. This method involves taking a sterile swab (similar to a Q-Tip) and gently scrubbing

the inside right cheek, then the inside left cheek, for approximately five to ten seconds. Two samples are requested in the event that one of the samples becomes contaminated or otherwise cannot be tested. The seized samples will be submitted to Connecticut State Lab and will be subject to examination, testing, and analysis, and will be compared to the DNA material obtained from the crime scene.

25. In the event the proposed subject is non-compliant, and due to the potential dangers to both the executing officers and the individual associated with executing a validly issued search warrant on a non-compliant subject, I would request that the Court authorize law enforcement agents and officers to use reasonable measures necessary to restrain that individual for the sole purpose of obtaining a DNA buccal swab. *See In Re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157, 171 n.8 (2d Cir. 2008) ("The subject of a validly issued search warrant has no right to resist the search") (citing cases including *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968)); *see also United States v. Bullock*, 71 F.3d 171, 176 (5th Cir. 1965) ("The use of force in taking the [hair and blood] samples was caused by Bullock's refusal to comply with a lawful warrant and was reasonable."). As articulated above, the buccal DNA swab will be obtained by taking a buccal swab and having the individual gently scrub the inside of the cheek approximately ten times.

## Conclusion

26. Based on the foregoing, I submit that there is probable cause to believe that buccal swabs taken from CARTER will contain evidence showing that he was involved in the Target Offenses.

CALVIN DEVRIES
Digitally signed by CALVIN DEVRIES
Date: 2024.03.11 15:04:16 -04'00'

CALVIN DEVRIES
SPECIAL AGENT, FBI

Subscribed to and sworn to me by telephone this 11th day of March, 2024

S. Dave Vatti
Digitally signed by S. Dave Vatti
Date: 2024.03.11 15:15:00 -04'00'

HONORABLE S. DAVE VATTI
UNITED STATES MAGISTRATE JUDGE